Edward Wayne BROWN, Appellant,

v.

STATE of Missouri, Respondent.

No. 56989.

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1972.

Edgar S. Carroll, Warrensburg, for appellant.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

BRUCE NORMILE, Special Judge.

■ This is an appeal from the judgment of the trial court overruling appellant's Motion to Vacate two separate sentences under Rule 27.26, V.A.M.R. The appeal having been taken to this court prior to January 1, 1972, the effective date of new Article V of the Constitution, jurisdiction is in this court pursuant to then Art. V, § 3 of the Missouri Constitution,

V.A.M.S. Our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j). Crosswhite v. State, Mo., 426 S.W.2d 67; Warren v. State, Mo., 482 S.W.2d 497, 499.

On September 17, 1970, appellant Edward Wayne Brown entered pleas of guilty in the Circuit Court of Johnson County, Missouri, to the separate offenses of operating a motor vehicle without the owner's permission and breaking jail. He was thereupon sentenced by the court to a term of three years' imprisonment on the motor vehicle charge and to a term of two years' imprisonment on the jail break charge. The second sentence was ordered to run consecutively to the first sentence and appellant's request for credit for jail time denied.

Appellant's first point on this appeal charges ineffective assistance of his two court-appointed attorneys for their failure to timely apply to the trial court for a psychiatric evaluation under § 552.020, RSMo 1969, V.A.M.S., to determine if appellant were competent to freely and voluntarily enter his pleas of guilty to the two charges.

Section 552.020, subd. 1, provides that: "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense, so long as the incapacity endures." Section 552.020, subd. 2, provides that: "Whenever any judge or magistrate has reasonable cause to believe that the accused has a mental disease or defect, excluding fitness to proceed he shall, . . ." order a psychiatric examination as further provided therein.

In fact, no such application was made in either of the appellant's cases, nor did the court otherwise order such an examination. It is apparent, however, that none of the evidence relating to appellant's alleged incompetence to proceed was presented to

the court prior to the acceptance of the guilty pleas.

The evidence at the hearing on the 27.26 motion included testimony from the appellant that he was under a great mental strain during his four months' jail confinement prior to the arraignments, that he lost about seventeen pounds in weight and twice attempted suicide by slashing his wrists because he was mad at the sheriff about the food in the jail. Although he received medical attention to the wrists, appellant was not hospitalized for these injuries. Appellant also testified that he had received psychiatric attention for suicidal tendencies in 1962 when he was approximately twenty years old. Again in 1968 or '69, he had a psychiatric evaluation and treatment while in confinement for a federal offense after cutting on some unidentified part of his body. As stated, the trial court was not aware of the above matters at the time of the arraignments.

At the 27.26 hearing, appellant also stated that his own behavior was quite unusual during that period in that he had turned himself in following his jail break. Appellant further testified, however, that he was fully aware at the arraignments of the nature of both charges against him, and that he understood the range of punishment that might be imposed upon him. Appellant did not testify that he lacked understanding of the proceedings or any ability to assist in his own defense.

At the 27.26 hearing, the sheriff who had appellant in custody for a four-month period testified that there was nothing unusual about appellant as compared with the other prisoners except for the wrist-slashing incident and the jail break. Appellant's attorney on the motor vehicle charge conferred with appellant approximately ten times. His attorney on the jail break charge testified that he had adequate time and opportunity to visit with the appellant following his original appointment and that he had had at least four, and perhaps more, different conferences with him. Both attorneys were aware of the wrist-slashing incidents and discussed them with appellant. After learning of those incidents, one of his attorneys stressed to appellant that he could have a psychiatric evaluation as to his competence and that counsel would request it. However, appellant responded that he had previously had psychiatric evaluation, that he was not interested in any more, and that there was certainly nothing wrong with him mentally. Other testimony of the attorneys was that appellant could communicate with them and was able to inform them as to the facts in the various cases; that appellant seemed normal in attitude, demeanor and understanding on the day of the arraignments; that appellant certainly knew and understood what was going on at the time and understood the nature and extent of the charges against him; and that appellant was elated over the possibility of getting out of the county jail.

After the defendant's plea of guilty to the jail breaking charge, his attorney did suggest to the court that the defendant was in need of psychiatric care. This was done in requesting that the sentences be made to run concurrently. The attorney also stated: "I think this individual is mixed up, he left jail and then turned himself in and I ask the Court to give consideration to these sentences running concurrently." The court thereafter offered appellant the opportunity to withdraw his plea if he desired, but defendant-appellant declined. Allocution was then had and appellant was sentenced.

The trial court made findings at each arraignment that the appellant's plea was voluntarily entered with a full understanding of the charges. A finding was also made on the Rule 27.26 hearing that the pleas were voluntarily made with understanding of the nature of the charges, that appellant was mentally competent and that appellant had refused psychiatric examination after suggestion of counsel. The trial court further found on the 27.26 hearing that the appellant's attorneys were highly

experienced and that they had each effectively represented appellant.

In support of his claim of ineffective assistance of counsel for failure to request a psychiatric evaluation under § 552.020, appellant cites Brizendine v. Swenson, D.C., 302 F.Supp. 1011. In that case, ineffective assistance of counsel was found because of failure to request such an evaluation. However, the attorney there was completely unaware of Chapter 552, RSMo 1969, V.A.M.S., and of the defendant's rights under it. Although the defendant's attorney insisted prior to and throughout the trial that Brizendine was not competent to proceed, no application was made for examination to determine Brizendine's fitness to proceed to trial. In the present case, appellant was not only advised by his attorneys of his rights to a psychiatric evaluation for such a determination, but he actually declined it. "Ineffectiveness of counsel cannot result from the giving of correct advice." Tucker v. State, Mo., 482 S.W.2d 454, 456. Likewise, "the claim of incompetent counsel cannot be sustained absent any showing that he had any honest basis for asserting movant was incompetent to stand trial." Franklin v. State, Mo., 455 S.W.2d 479, 485. In this case, appellant testified that he was fully aware of the nature of both charges and understood the range of punishment. Testimony from the appellant and both of his attorneys supports a finding that he was able to assist in his own defense. Thus, there was adequate evidence that counsel did not have an honest basis for asserting appellant's unfitness to proceed. The trial court's finding of effective assistance of counsel in this regard was not erroneous.

By his argument in his brief on this point, appellant also urges error in the denial by the trial court of appellant's motion *made at the Rule 27.26 hearing* for a psychiatric evaluation under § 552.020 and under the Brizendine case. Although § 552.020 "does not require that the motion provided for be filed at any particular time," the language of the statute ("No person * * * shall be tried, convicted or sentenced * * * so long as the incapacity endures") . . . "implies that the motion can be made at any time before sentencing." State v. Lowe, Mo., 442 S.W.2d 525; McCormick v. State, Mo., 463 S.W.2d 789, and State v. Smith, Mo., 467 S.W.2d 6, 10. In State v. Stock, Mo., 463 S.W.2d 889, it was held that the motion could be made even after trial and conviction. It was noted again in that case that ". . . this procedure may be invoked anytime prior to sentence." Since § 552.020 is concerned with pretrial or presentence proceedings to determine an accused's fitness to proceed, it does not apply to post-trial procedures. Chapter 552, RSMo 1969, V.A.M.S., does not otherwise make any provision for post-sentence psychiatric examination to establish the prior fact of fitness to proceed.

Appellant argues further that since a doubt was presented at the 27.26 hearing on his fitness to proceed prior to pleas, a psychiatric evaluation as to that fitness is required under Brizendine v. Swenson, supra. As indicated there, it is true that "the conviction of an accused person while he is legally incompetent violates due process, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)," Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. However, this case differs from the Brizendine case in several respects. First, in that case defense counsel insisted before and during trial that the defendant was not fit to proceed or competent to cooperate with his attorney. That was not the case here. Second, at the time of the arraignments in this case, the trial court did not have any information questioning defendant's fitness to proceed, so as to establish a "bona fide doubt" under Pate v. Robinson, or to give "reasonable cause" to the court to believe that the accused had a mental disease excluding fitness to proceed under § 552.020, subd. 2. Third, in Brizendine the order for a psychiatric evaluation under § 552.020 was

held to judicially establish the "bona fide doubt" as to fitness to proceed so as to require a hearing on that issue. In the instant case, no such order was made.

■ The test as to whether an accused is competent to stand trial or to plead "must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824; Wolf v. United States, 10 Cir., 430 F.2d 443, 444(1); Pulliam v. State, Mo., 480 S.W.2d 896, 903. In making a determination of that competence to proceed, the trial court had the opportunity to observe and interrogate appellant at both arraignments and to observe and hear appellant testify at the Rule 27.26 hearing as well as the benefit of all the other evidence touching on this issue. Under the circumstances of this case, the trial court's action in finding appellant fit to proceed and denying the motion for a psychiatric evaluation made at the 27.26 hearing (months after sentencing) is not clearly erroneous.

Appellant's second point is that his pleas of guilty were not voluntarily entered because they were made as a result of duress, coercion, mistake, undue influence and the holding out of false hopes. In this regard appellant first states that he was led to believe that an agreement had been reached that he would receive a three-year sentence on the motor vehicle charge and a two-year sentence on the jail breaking charge, the sentences to run concurrently and with credit for the jail time served. In fact, the prosecuting attorney did make these recommendations. However, the trial court did not follow the recommendation of the prosecutor but gave sentences for the recommended terms with the sentences to run consecutively and without credit for jail time.

At the Rule 27.26 hearing, appellant further testified that his attorneys did not represent to him that the judge would follow the agreement made by the prosecuting attorney and that he knew the judge was free to set the penalty, although he had the false hope that the judge would follow the prosecutor's recommendations. He also testified that he was relying on his past experiences in being sentenced where the courts had followed recommendations made.

Although appellant's attorneys confirmed the agreement with the prosecutor, both of them testified that they advised appellant that there was no assurance that the court would follow the recommendations of the prosecutor. The trial court clearly and repeatedly advised appellant that it was not bound by any agreement between his attorneys and the prosecuting attorney or by any recommendations by the prosecuting attorney. The court clearly and carefully advised appellant of the range of punishment carried by the two charges.

■ The rule has been often stated as follows: "If the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea. The law favors a trial on its merits." State v. Cochran, 332 Mo. 742, 60 S.W.2d 1, 2; State v. Rose, Mo., 440 S.W.2d 441, 443. "The material inquiry is: Was the defendant misled, or under a misapprehension, at the time he entered his plea of guilty?" State v. Dale, 282 Mo. 663, 222 S.W. 763, 764. A guilty plea induced by a mistaken belief that a binding plea agreement has been made is invalid whether the defendant is misled by his own attorney, State v. Rose, supra, the prosecuting attorney, State v. Cochran, supra, or by the court, State v. Edmondson, Mo., 438 S.W.2d 237. Also see State v. Tyler, Mo., 440 S.W.2d 470, 474, where this court has approved Section 3.3 of the American Bar Association's "Standards Relating to Pleas of Guilty" (approved by the House of Delegates in February, 1968) providing for discretion-

ary concurrence of the court to plea agreements but permitting withdrawal of the guilty pleas if the court later determines not to include the concessions contemplated by the plea agreement.

■ In the instant case, appellant was not misled by anyone to cause him to believe the plea agreement was binding on the court. The prosecuting attorney kept his agreement by making the agreed recommendations. Appellant *knew* that the court was not bound by such recommendations and knew what the range of punishments was. The fact that appellant's pleas resulted from bargaining did not deprive them of their voluntary nature, even though the bargained recommendations were not followed. Pulliam v. State, Mo., 480 S.W.2d 896, 904(5).

■ Under this same point, appellant also contends that he was coerced into entering a plea because of the unsuitable jail conditions. However, the only evidence on this allegation was appellant's response when asked to tell the court what the objectionable conditions were and what effect they had on his plea. He answered, "Nobody likes to just eat two meals a day and sleep on springs. It bothered me. It's pretty nasty. You can't get nobody to clean up. And it's that and you can't see out or nothing. It gets to you after awhile." Appellant did state that he would prefer to spend sixteen months in the penitentiary rather than one year in jail. This meager evidence does not satisfy appellant's burden of proof that he pleaded guilty because of the adverse jail conditions. It was for the trial court to determine the credibility of the witness and the weight to be accorded his testimony in this regard. Walster v. State, Mo., 438 S.W.2d 1.

The findings of the trial court as to the voluntary nature of appellant's pleas are fully supported by the evidence and must be sustained.

Appellant's third point charges ineffective assistance of counsel by reason of their failure to request leave to withdraw his guilty pleas after the court imposed different sentences than recommended by the prosecuting attorney. However, the record discloses that appellant knew the court was not bound by any agreement reached *between prosecutor and appellant's* attorneys. Appellant did not object to the sentences when made. In fact, one of the attorneys testified appellant's reaction to the sentencing was one of elation at the prospect of leaving the county jail. Appellant stated that after sentencing, "I just *went out grinning.*"

■ Under Criminal Rule 27.25, V. A.M.R., the withdrawal of a plea of guilty after sentence may be allowed "to correct manifest injustice." State v. Mountjoy, Mo., 420 S.W.2d 316. Also see Section 2.1, American Bar Association, "Standards Relating to Pleas of Guilty." The failure of the trial court to follow the recommendation of the prosecuting attorney in this case does not indicate a "manifest injustice." The failure of counsel to request withdrawal of the pleas would not therefore constitute ineffective assistance. The finding of the trial court to this effect is fully supported by the evidence and must be affirmed.

■ Appellant's last point charges error in the denial by the trial court at the Rule 27.26 hearing of appellant's request to exclude the state's witnesses from the courtroom. The rule was sought to be invoked against the two attorneys who originally represented appellant, the former prosecuting attorney and the sheriff. The ruling of the trial court emphasized that all the witnesses were officers of the court and should not be excluded for that reason. In the case of Duncan v. O'Nan, Ky., 451 S.W.2d 626, 629, it was stated that " . . . (o)fficers of the court are generally not subject to the rule requiring exclusion of a witness from the courtroom

during the testimony of other witnesses principally because the duty they bear to the court is much greater than that borne by others." The case went on to hold, however, that the exclusion of an attorney-witness rested in the sound discretion of the trial judge. In the case of Berberet v. Electric Park Amusement Company, 319 Mo. 275, 3 S.W.2d 1025, 1027, the trial court did exclude an attorney-witness and this was held not to be an abuse of judicial discretion. The enforcement of the exclusionary rule is a matter within the sound discretion of the trial court. Crews v. Kansas City Public Service Company, 341 Mo. 1090, 111 S.W.2d 54, 60(8). No abuse of discretion is shown in the instant case.

For the reasons stated, the judgment of the trial court is affirmed.

HOLMAN, P. J., and SEILER, J., concur.

BARDGETT, J., not sitting.